UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| STEVEN T. VETTERS, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF SHARON G. VETTERS, DECEASED, FOR AND ON BEHALF ALL THOSE ENTITLED TO RECOVER FOR THE DEATH OF SHARON G. VETTERS UNDER THE TEXAS WRONGFUL DEATH AND SURVIVAL ACTS, ERIN VETTERS RUEL, STEVEN B. VETTERS, JOHN W. STOCKTON, AND HAZEL L. STOCKTON  Plaintiffs | § § § § § § § § § § § § § § § | |
| V. | § § | CIVIL ACTION NO. 05-03 |
| DAIMLERCHRYSLER CORPORATION  Defendants. | § § § | JURY |

### AFFIDAVIT OF JAMES R. LOCK

STATE OF TEXAS           §
                         §
COUNTY OF BRAZOS         §

James R. Lock, having been first duly sworn under oath, deposes and states as follows:

1. My name is James R. Lock. I am over the age of twenty-one, of sound mind and am competent to make this affidavit. I have personal knowledge of the facts contained herein, and they are true and correct.

2. I have been retained by the Plaintiffs in the present case to conduct an independent investigation into the accident of December 10, 2004, in which Sharon Vetters sustained severe injuries and later died. Specifically, I was retained to conduct

Affidavit of James R. Lock

an accident reconstruction and provide opinions and conclusions regarding the scene of the accident and the movements of the subject Dodge Durango. Attached hereto as Tab 1 and incorporated by reference herein as if set forth in full is a true and correct copy of the Collision Research Associates Summary Report that I authored. Attached hereto as Tab 2 and incorporated by reference herein as if set forth in full is a true and correct copy of my deposition taken in this matter. The factual statements made in my report are all within my personal knowledge (unless noted that they are based on the measurements, calculations, or opinions of other experts) and are true and correct. The conclusions and opinions rendered in that report, as well as expressed during my deposition, are all based upon the information reviewed and collected at this point, as well as my education, training and experience in the field of collision reconstruction and highway safety. Further, my conclusions and opinions are based on accepted, established, and reliable techniques and methods that are used by, and normally relied upon, by experts in the accident reconstruction field. *See* Tabs 1 and 2.

   3.   I have reviewed the Defendant DaimlerChrysler Corporation's (Chrysler) Motion to Exclude Portions of James Lock's Report and Testimony filed in this matter and I submit this affidavit with attachments for the Court's review in response to Chrysler's motion. The documents referenced in the attached tabs Nos. 1-5 are incorporated by reference the same as if set forth herein. To assist the Court with locating a particular document, I have attached to my affidavit an "Appendix of Evidence Attached for the Court's Review", referred to as "Appendix".

   4.   I have been employed with Collision Research Associates since January 1991 as a motor vehicle transportation safety expert and traffic accident reconstructionist. Collision Research Associates is an independent consulting firm

Affidavit of James R. Lock

located in College Station, Texas. My work with Collision Research Associates has been focused on heavy truck, motorcycle and passenger vehicle traffic collisions, investigations, reconstruction and analysis. I also performed the same duties while employed with Scientific Inquiry, Inc., from January 1982 to June 1994.

5. I earned a Bachelors of Science in Political Science, with a minor in General Engineering, in 1987 from Texas A&M University. I am a member of the Society of Automotive Engineers (SAE) and have been since 1977. I am also a member of the Accident Investigation and Reconstruction Practices Committee for SAE. I was also a member of the National Research Council, Transportation Research Board, Motorcycle and Moped Committee, from 1983 to 1992. I am also a member of the Texas Association of Accident Reconstruction Specialists. I was also a Fellow: Board Certified Forensic Examiner for The American Board of Forensic Examiners from 1994 to 2004.

6. I worked in various positions for the Texas Transportation Institute, Texas A&M University System, from August 1975 to June 1992. My activities included accident investigation and reconstruction, research and reporting for federal agencies, state agencies and private sponsors. I also provided detailed technical assistance and policy analysis to the Federal Government and the State of Texas in the area of highway safety. I held the following positions during my tenure with the Texas Transportation Institute: instructor, highway safety specialist, research associate, program manager and assistant research scientist. A more detailed explanation of my professional background, including my 17 years work experience as a highway safety researcher and collision reconstructionist while at Texas A&M University, and the more than 27 years of experience conducting traffic collision investigations and reconstructions in research and litigation related matters, can be found on my Curriculum Vitae, a true and correct

Affidavit of James R. Lock

copy of which is attached hereto as Tab 3 and incorporated by reference as if fully set forth herein.

7. In this particular case, I reviewed and relied upon not only my training, education, and practical experience in this particular field of expertise, but also the following:

    (1)    the police accident report;

    (2)    photographs of the vehicle and the accident scene;

    (3)    Total station scene survey by Collision Research Associates;

    (4)    scene and vehicle inspection and photographs by Collision Research Associates;

    (5)    video of vehicle inspection by Collision Research Associates;

    (6)    depositions and exhibits of Michael Pena, Michael Hernandez, Ruben Aceves, Carolyn Atherton, Ray Fernandez and David Johnson; and

    (7)    my report and supporting file materials.

8. I am providing this affidavit to illustrate that I am more than qualified to render the opinions I provided in my report and deposition testimony and that my opinions have the indicia of reliability sufficient to satisfy this honorable Court's analysis under *Daubert*.

9. Based upon the work I have done in this particular case, my training, experience, education, review of relevant documents and literature, I have been able to reach certain opinions and conclusions concerning the accident scene, the interactions between Mrs. Vetters and the vehicle and the path of travel of the vehicle. Although I was not specifically retained as a human factors expert in this matter, I do have the education, training and experience to provide those types of opinions and have done so

in several prior cases. Once this honorable court is apprised of the factual basis for my opinions and methodology, the allegations made by the Defendant that my opinions are "unreliable" can be reduced to be baseless assertions. *See* Tabs 1, 2, 3.

10.   This specific incident involves a single vehicle collision where a 2002 Dodge Durango rolled over the deceased, Sharon Vetters. Following the accident, the Durango was found running with the headlights on, all the doors shut and in the reverse gear. Possible witness/contact markings were found along the driver's side of the vehicle. *See* Tabs 1, 2, 4, 5.

11.   Chrysler contends in its motion that I do not have any information regarding whether Mrs. Vetters moved the gear-shift lever prior to exiting the vehicle. This is patently false. In all probability, from the topography of the accident scene, it is not likely that Mrs. Vetters could have left her vehicle in reverse prior to exiting the vehicle to retrieve her mail that morning. The negative slope of the driveway would not allow Mrs. Vetters to exit her vehicle while it was in reverse and would certainly not allow Mrs. Vetters enough time to travel the 17 to 22 feet to her mailbox to retrieve her mail before the vehicle began to roll backwards. It is clear that Mrs. Vetters had enough time to retrieve her mail because incoming mail was found near the final resting point of Mrs. Vetters' body, which was located across the roadway from Mrs. Vetters driveway and mailbox. It is intuitively obvious Mrs. Vetters exited the vehicle, walked to her mailbox, retrieved the incoming mail, and then moved back to the vehicle as it began its movement across the road. Mrs. Vetters fell to the ground on the opposing driveway and was run over by the left front tire of her vehicle. *See* Tabs 1, 2, 4, 5.

12.   Chrysler further incorrectly asserts that I cannot opine that Mrs. Vetters attempted to re-enter and the vehicle and partially manipulate the steering wheel before

Affidavit of James R. Lock

she was killed. Chrysler incorrectly asserts that I did not calculate the percentage of steering input by Mrs. Vetters by citing to my deposition testimony. I actually was able to calculate the probable steering input by Mrs. Vetters' herself by looking at the angle of the front tires in the police photographs. My calculations determined the steering input occurred just after the front wheels had just left Mrs. Vetters' driveway as the vehicle was moving rearward. It is more probable than not that the steering angle of the front wheels was altered as the vehicle overran Mrs. Vetters' body. *See* Tabs 1, 2.

13. The opinions expressed herein are based upon my education, training, experience, observations, scientific and technical literature, transportation research I have conducted and other cases that I have personally reviewed and participated in. My expressed opinions and the basis thereof have followed the accepted, valid, and reliable methodology and techniques by the scientific community and are of a type reasonably relied upon by experts who practice in my field.

FURTHER AFFIANT SAYETH NOT.

_____
JAMES R. LOCK

SUBSCRIBED AND SWORN TO before me this 7th day of November 2005.

_____
Tish Wilson Parker
Notary Public



Affidavit of James R. Lock